## Brown et al. *v*. Wesson et al.

### [74 South. 831, Division B.]

1. EQUITY. *Bill of review. Statute of limitations.*

   A bill of review is one filed to procure an examination and reversal of a decree after its enrollment, for some mistake appearing on the face of the papers in the case or from some fact arising subsequent to the original decision which would change the status of the partie's right.

2. SAME.

   A bill filed to secure an examination and reversal of a partition decree for mistake existing at the time of the entry of the decree, but not appearing on the face of the papers in the case or known to the parties is not a bill of review, barred by the two years statute of limitations.

3. LIMITATION OF ACTIONS. *Operation and effect. Bill of reviews.*

   A bill of review as to all parties except minors must be commenced within two years, and the fact that one of the complainants was a minor would not aid the other complainants against whom the two year statute had expired.

4. SAME.

   It is true that the minor, on reaching majority, may bring suit that would cause the whole partition to be overturned and corrected, but, only the minor could bring the suit. The parties who had let the statutes expire could not initiate the suit, though they might consent to or join in it.

5. EQUITY. *Mutual mistake in partition decree. Bill of review.*
   A suit to correct erroneous boundaries in a partition decree due to mistake in a survey, embodied by the commissioners in their report, which mistake was unknown to all parties to the suit as well as the officers of court at the time of the entry of the decree, is an "original suit," in which equity has power to correct the mistake, where no innocent party will suffer, and is not a bill of review.

6. EQUITY MISTAKE. *Jurisdiction.*
   The jurisdiction of equity in cases of mistake is as broad and coextensive as its jurisdiction in fraud.

7. JUDGMENT. *Equitable relief. Estoppel.*
   Although complainants had secured an entry of a decree they are not estopped from ascertaining that the decree is erroneous on account of a mistake, where such mistake was unknown at the time of entering the decree.

APPEAL from the chancery court of Lee county.

HON. A. J. McINTYRE, Chancellor.

Bill by W. D. Brown and others against J. W. Wesson, H. C. Stovall and another in which defendants named, answered with a cross-bill. From a decree dismissing the bill in part, plaintiffs appeals and defendants cross-appeal.

Complainants filed their bill in the chancery court of Lee county, at the April, 1914, term, against the defendants H. C. Stovall, John W. Wesson, and Mrs. Mary Carruth, setting forth: That at the July, 1909, term the complainants in the present bill and Mrs. Mary Carruth, who was at that time Miss Mary Brown, filed a bill in the chancery court of Lee county, praying for the partition of land belonging to their father George Brown, and mother, Mrs. E. C. Brown, which belonged to them in equal shares by the will of their parents. That at the September, 1909, term of the chancery court of Lee county, a decree was made by the said court for the partition of said lands which decree provided for partition in kind, and for the purpose of making a partition W. L. Joyner, G. W. Long, and J. S. Thompson were appointed commission-

ers. That these commissioners, with the assistance of a surveyor, made a partition of the said lands, and made a report thereof in writing, to which report a plat or map of the lands was attached. That in said partition, lands of the said two estates were intended and attempted to be set apart by allotting to Annie Lou Brown, Ruth Brown, and Mildred Brown, and the defendant Mary Carruth, in equal shares of approximately two hundred and ten acres each. That the commissioners attempted to lay off said lands in four equal divisions of approximately to hundred and ten acres each, divided by due east and west lines, which subdivisions were reported by the commissioners and numbered on the map 1 to 4, inclusive, beginning at the north end and going to the south boundary line of said tract. That the commissioners intended and attempted to allot to Annie Lou Brown share No. 1, being two hundred and ten acres off the north side of the said body; to another complainant, Ruth Brown, share No. 2, being two hundred and ten acres adjoining share No. 1 on the south; to the defendant Mary Carruth, lot No. 3, adjoining said lot No. 2 on the south, being two hundred and ten acres; and to Mildred Brown lot No. 4, being two hundred and ten acres on the south side of said tract of land, and being the balance of said tract. The bill sets out the description, as contained in the original report and decree, of each particular lot, being a description by metes and bounds; that the commissioners found in their report that each tract was valued at approximately eight thousand dollars except share No. 4, which was valued at seven thousand dollars with owelty against the tracts of land awarded to the male complainants to make up share to the value of eight thousand dollars. It is alleged that in making this division the commissioners and suveyor made mistakes by which lot No. 1 actually contained only one hundred and eighty-one acres; that share No. 2, to Ruth Brown, contained two hundred and six and seven tenths acres; that share No. 3, awarded to Mrs.

Mary Carruth, contained two hundred and fifty-eight and four tenths acres, or forty-eight and six tenths too much; that share No. 4, assigned to Mildred Brown, contained approximately two hundred and ten acres, and was correctly described; that these errors occured by reason of mistake in surveying the land, and were unknown to all the parties at the time of the making of the report and entering of the decree confirming the report; that two hundred and ten acres was approximately the real number of acres that should have been, and was intended to be, assigned to each of the said parties; that the mistake was not discovered until shortly before the filing of the present bill, when an accurate survey, by a highly competent surveyor, was made, by which it was shown that each share should be two hundred and nine and four tenths acres, and that on this basis the said tracts would be approximately equal in value, if share No. 4 was credited with the amount paid as owelty in the original decree; that if the original decree was permitted to stand there would be an injustice done to the parties by reason of the mutual mistake made in the original partition decree.

It was alleged that Mrs. Carruth had conveyed her lot or tract to Wesson and Stovall, and that they took under an agreement that there were two hundred and ten acres in the tract, or approximately that amount, and paid for the land on the valuation of two hundred and ten acres and with the belief that it only contained that amount of land; that they took the land subject to the decree, and had knowledge of the intention of the parties in making said division. It was alleged that, some time after the original division, the parties, through their brother, Mr. Brown, were in possession jointly and not in severalty, and the lands were leased out as an entire body and the income divided equally between the female complainants in the original bill. It is alleged: That the boundaries of the recent survey showed that some of the tracts would overlap; that is,

in some of the tracts the same land would be embraced
within the calls of more than one deed, leaving a body
of disputed land called for by both deeds, and that by
reason thereof there was an impossible partition. That
the joint arrangement by which the lands were rented
and the proceeds divided equally between the four fe-
male complainants of the original bill continued up to
and included the year 1913, and that on the 10th day
of January, 1914, Mrs. Carruth conveyed her share to
Wesson and Stovall. It was alleged further that Wesson
and Stovall had gone into possession, and had received
the use and profits of forty-eight and six tenths acres
more than their proper share, and that this was
valued at a rental value of three hundred and fifty dol-
lars per annum.

There was a prayer for a correction of the boundaries
of the several tracts to conform to the real facts, and a
prayer for judgment against Wesson and Stovall for
the rental value of the excess of land used and occupied
by them.

Wesson and Stovall answered the bill separate from
Mrs. Carruth; admitting the description of the land
contained in the original bill; admitting that the com-
missioners in the partition suit laid off and allotted to
the complainants the lots by numbers as alleged in the
original bill, but denying that the commissioners and
surveyor made the errors set out in the original bill;
denying that it was the intention of the parties to have
each tract contain equal acres; denying that the
recent survey was a true and correct survey; denying
the allegation as to what would be the true and correct
survey of the tract, as set forth in the bill. They denied,
also, that there was an overlapping of the said lands.
They admit purchasing from Mrs. Carruth her share, and
admit the description contained in the deed, as set forth,
but deny that Mrs. Carruth sold her land to the said
Wesson and Stovall with the distinct understanding that
she was selling approximately two hundred and ten

acres; deny that they bought the said tract of land sub-
ject to a survey in order to ascertain the metes and
bounds as alleged; deny the right of the complainants
to have the original decree amended to correspond to
the intention of the parties; and plead the statute of
limitation of two years as against a bill of review.
They also plead that Annie Lou Brown, minor, defend-
ant, was improperly joined in the cause, and that she
had no real interest in the controversy of this suit; and
plead that the complainants W. D. Brown, Levy S.
Brown, and Mille Brown were improperly joined. They
make their answer a cross-bill as against Mrs. Carruth,
Ruth Brown and Dr. Roy Carruth husband of Mary
Carruth, and pray that the claim of Ruth Brown,
for overlapping land, be canceled as a cloud on their
title.

Mrs. Carruth answered separately, and admits the
filing of the original bill, and the laying off of the land
by the commissioners, but denies that the commissioners
made the mistake alleged in this bill, and denies that
the commissioners attempted or undertook to assign to
each of the said parties equal acreages of land, but only
tried to assign tracts of land of equal values. She de-
nies the correctness of the recent survey as to what
would be embraced in a correct division so as to pro-
duce equal areas, as set forth in the bill; denies that the
description contained in her deed overlapped the lot of
Ruth Brown, as alleged in the bill; and denies that, until
her marriage, W. D. Brown, her brother, had the con-
trol of the shares of land, as alleged in the bill; admits
conveying her interest to Wesson and Stovall; and ad-
mits that she sold to Wesson and Stovall with the
understanding that she was conveying them her share
of the land with the understanding that there were ap-
proximately two hundred and ten acres; and admits
that Wesson and Stovall had gone into possession of
said tract conveyed to them; and denies that the com-

plainants have the right to have the decree originally entered interferred with.

There was much testimony taken, and the chancellor found the facts to be, that there was a mistake in the original partition; that it was the intention of the parties in interest in the original suit to have the four female complainants in the original suit assign equal areas or acreages of land, and found that the attorneys in the case, and the court, understood, at the time, that they were being awarded equal amounts of land; that Wesson and Stovall bought this land; that they thought at the time they were getting a one-fourth of the eight hundred and forty acre tract, and understood that they were getting two hundred and ten acres, and that they insisted in their deed that a definite number of acres be fixed in the deed, insisting that the deed read "two hundred and ten acres," and not "two hundred and ten acres, more or less," and that when they afterwards discovered that the lands conveyed by Mrs. Carruth contained more than two hundred and ten acres, that they were astounded, and sent for Will Brown, one of the complainants, "to come up and see about it," but that they did not surrender any part of this land. The chancellor then recites:

"The question is raised as to whether or not this is a bill of review, or whether an original bill, or whether or not they are estopped by their action, having been parties to the suit in which this land was divided, and whether they have a right to bring this suit as a suit of review, or whether they have any right to bring any other kind of action, except the bill of review. I am rather of the opinion that if this is a bill of review, they are estopped on the grounds of having brought the suit themselves, and am rather of the opinion that it is the only suit that can be brought under the statute. Feeling that way about it, and knowing the case is going up anyway, as to that part, I shall dismiss the bill"

The chancellor further found that as to the seventeen and one-half acres claimed by Miss Ruth Brown, and also by Wesson and Stovall, that Ruth Brown's title to this seventeen and one-half acres embraced in the overlap between her share and the share of Wesson and Stovall was her superior, and awarded to her the seventeen and one-half acres of land, and divided the costs equally between complainants on the one side and Wesson and Stovall on the other, and denied relief to other features of the bill.

*W. D. & J. R. Anderson,* for appellants.

We agree with Messers, Mitchell & Clayton the attorneys for the cross-appellants, Wesson and Stovall, that this is not a bill of review. The authorities cited by them in their brief, we believe, sustain that view. This is not a bill to correct errors of law on the face of the partition decree nor on the ground of newly discovered evidence. As we understand those are the essential elements of a bill of review. This is an original bill in equity to have the court enter now the decree it intended to enter, but failed to enter in the partition suit through fraud, accident or mistake: If it is such a bill and the law authorizes such a proceeding the statute of limitations of two years as to bills of review has no application.

One of the original heads of equity jurisdiction was based on fraud, accident or mistake. This is one of the fundamental principles of equity jurisdiction. This principle has a broad and deep application. It is not confined to correcting deeds and contracts erroneously entered into thru fraud, accident or mistake, but applies to every conceivable transaction known to the business world. It applies with equal force to the judgments and decrees of courts. Of course as to judgments and decrees, the evidence that they were procured by fraud, accident or mistake, necessarily must be clear and con-

vincing. And furthermore the fraud complained of need not be actual fraud; it may be what is known as constructive fraud or fraud in law.

The intention of the parties may be ever so honest and still a condition may be brought about which will operate as a fraud on the rights of some one concerned. In order to set aside a judgment, it is not necessary that the evidence show that it was procured by fraud, accident and mistake, but either one will be sufficient if clearly proven. Citing 2 Storeys Equity Jurs., sec. 885. 30 Cyc. 304-305.

*Fore* v. *Foster,* 9 S. W. 497, (S. P. Court of Va.) was a partition suit. The land partitioned consisted of about 1500 acres. Through error in making the partition in kind one of the parties got two hundred and twelve acres less than he was entitled to, and another party got that much more than he was entitled to and thought he was getting. This error was caused by a mistake of the surveyor. The time had expired for filing a bill of review, if a bill of review had been the proper procedure.

The court said in part: "The decision of the circuit court is rested upon the ground that the bill of complaint in this case was in the nature of a bill of review, and seven years having elapsed since the final decree was made whereby the error was committed, said bill of review came too late and was barred by the statute of limitations. The bill in this case is an original bill to correct a mistake of fact and falls within the general rule that an act done or contract made under a mistake or ignorance of a material fact, is voidable and reviewable in equity; and this rule applies not only to cases where there has been a studied supression or cancealment of facts by the other side which could amount to fraud, but also to many cases of innocent ignorance and mistake on both sides; and here a material mistake involving a large sum of money or a large tract of land, as it may be regarded, that equity is not lacking in juris-

diction to relieve in such a case is not contradicted here but it is admitted on every hand that the mistake set forth above was properly relieveable in a court of equity; but it is claimed that, as this is a bill in the nature of a bill of review, the statute of limitations provided by law as to bills of review will apply to this. But this view does not appear to be sustained by reason or authority. If discovered in time the evidence which disclosed the error being newly discovered, would have been ground for bill of review. It is also true that mistake is reviewable upon the ground above stated as a matter of original equity jurisdiction, and as such this suit is brought. In this case no negligence or laches are shown. The bill was filed shortly after the mistake was discovered and within one year, and it could not be reasonably considered that it ought to have been filed before it was discovered. There are cases where the delay might be such as to cause a court of equity to refuse relief under well understood principles, but there has been no such delay here; and that the error or mistake was one made in the course of legal proceedings does not alter the principles above stated as to equitable jurisdiction. That court will interfere in case of mistakes in judgments and other matters of record injurious to the rights of parties citing several authorities. *Sullivan* v. *Lumsden* (Cala.), 50 Pac. 777; Black on Judgments, sec. 335; *Adair* v. *Cummings,* 48 Mich. 375, 12 N. W. 495; *Harris* v. *Hicks,* 49 S. W. 110; *Pulliam* v. *Wilkerson* (Tenn.), 7 Baxt. 611; *Meritt* v. *Shaw,* 15 Grants Chancy. 321, *Wilbur* v. *Dyer,* 39 Me. 169.

Our supreme court (it is true in cases not similar to this on their facts), has taken a very broad view of the power of courts over their judgments rendered at a former term. Our court has held in several cases that where a judgment entered at a former term was not the judgment intended to be entered, the court has the inherent power outside of any statutory authority, to enter the judgment intended to be entered. *Harper* v.

*Barnett,* 16 So. 533; *Wilso* v. *Hansboro,* 54 So. 845; *Cotton* v. *McGehee,* 54 Miss. 621.

But suppose we are mistaken in our contention above and this is a bill of review in the strict sense, or a bill in the nature of a bill of review, and is therefore covered by the statute of limitations of two years covering bills of review. Still we contend that the bill is maintainable as such. Section 3111, Code of 1906, provides that bills of review in chancery court shall be filed in two years next after the date of the final decree sought to be reviewed, saving to persons under disabilities of infancy, etc., the period of two years after the removal of their disabilities. At the time this bill was filed one of the complainants, Annie Lou Brown, was still a minor. The balance of the parties had reached their majority more than two years next before the filing of the bill.

There is no pretense that the complainant, Annie Lou Brown, was barred if she had any rights, but they say she has none and this, notwithstanding the record, shows without question if the partition decree stands, she looses twenty eight and three tenths acres worth about one thousand and four hundred. They contend that if the relief is granted to Annie Lou Brown the owner of share No. 1 it must be off of share No. 2, the share of Ruth Brown, because you have to go through share No. 2 before you get to share No. 3. Partition decrees are an exception to the general rule that decrees and judgments are several. The contention is that section 3128, Code 1906, providing that the statute of limitations shall be severally applied, applies in this case and that all of the balance of the parties being barred except Annie Lou Brown she is without any rights as to the excess in share No. 3, but must look alone to share No. 2, the one just south of her. A decree of partition in kind is an entirety; it is inseparable. In its very nature if it is corrected as to one of the co-tenants it must be corrected as to the others.

"Partition void as to some of the parties or some of the property. The object of partition being to terminate the cotenancy and vest in severalty the several parcels assigned to the respective cotenants, if it fails in this object the consideration for it fails and it does not operate at all or to any extent." 30 Cyc, 165.

In the case of *Lawson* v. *Bonner,* 88 Miss. 235, 40 So. 488, and *Moore* v. *Summerville,* 80 Miss. 323, 32 So. 294, and 31 So. 793, our supreme court held that a partition decree was an entirety and could not be reversed in part or corrected or changed in part. This is true in some cases even where it is a partition sale. Applying these principles to the case in hand their justice and soundness can at once be seen. If this is a bill of review and the two-year statute of limitations applies, clearly Annie Lou Brown, who was a minor when the bill was filed, was not barred.

Share No. 1. was allotted to her. It was short twenty-eight and two tenths acres worth about one thousand and four hundred dollars. We ask how could this decree be corrected as to her and justice be done as to the owners of the other three shares? It may be contended that if we are right in our position on this point then the whole decree of partition must be opened up; not only this tract of land but as to all the balance of the land including that belonging to the estate of the mother, Mrs. Brown. In the first place nobody is asking that this be done. No complaint is made by anyone as to the partition of the balance of the land. All the parties are before the court in this case. This tract of approximately eight hundred and forty acres is segregated from the balance of the land; it is an entirety. There was no error in the decree as to any of the other lands. This tract was set aside to the four girls in full of their entire interests in the estate of both their mother and father, except as to share No. 4, as to which there was no error in that partition proceedings, to which an owelty of one thousand dollars was added

out of the balance of the estate. The court is not going to open up the decree as to the balance of the lands when there was no error in that part of the decree and in a case like this where all the parties are satisfied with that part of the decree.

*P. C. Long,* for appellee.

So far as this lawsuit is concerned between complainants and defendants, Wesson & Stovall, it must be settled almost entirely on legal questions, and these are: First, whether this court has any jurisdiction at this late day to entertain the bill. Second, whether the complainants at the time of filing the bill, except Annie Lou Brown, on account of being over the age of twenty-three years, can now maintain the bill.

The attorneys for appellants and cross-appellants seem to be agreed that the original bill in this cause is not a bill of review nor a bill in the nature of a bill of review but cross-appellants contend that a bill of review or one in the nature of a bill of review is the only proceedings and that all of the complainants are barred as to either of these remedies on account of not having filed the same in time, except the complainant, Annie Lou Brown, and they contend that if this complainant has any complaint to make it is against the owner of share No. 2 as platted, because if she has lost any land that the commissioners intended to give her, it lays on the north side of share No. 2 and is no part of the land in controversy.

Now, I agree with attorneys for cross-appellants if they are right in the contention that the above stated remedies are the only ones applicable or under which complainants could have proceeded, that then complainants are without any remedy in this court, because if Ruth Brown, the owner of share No. 2 and to whom all of the land in controversy would have been allotted if the intention of the commissioners had been carried out

and decreed is barred from any remedy on her own account, then she certainly cannot do through Annie Lou Brown what she herself could not have done. *Moore* v. *Sommerville,* 80 Miss. 323.

I have no well defined ideas on the question whether the bill is maintainable as an original bill in equity to correct the mistake and errors that were made in the final decree in partition suit either as between the original parties or third parties, and therefore, leave the argument of that question to the attorneys for cross-appellants after merely stating that, in my opinion, regardless of what appellants may try to call the bill in this cause, that it is a bill of review or a bill in the nature of review, and that the appellants cannot whip the devil around the stump by calling it something else, because if they can do so, then they practically nullify the intention of the legislature to at some reasonable time, quiet the title of those holding land under partition decrees and sales. *Rosanna Potts* v. *Canton Cotton Warehouse Co.,* 70 Miss. 462; *Hart* v. *Gardner,* 74 Miss. 153; *Barksdale* v. *Barksdale,* 92 Miss. 166; *O'Herrin* v. *Brooks,* 67 Miss. 267; 13 Cyc. 607.

And I submit that as between the appellee and cross-appellants, the decree of the lower court should be affirmed, regardless of what the court may decide to be the respective rights of appellants and cross-appellants.

*Robinson & Thomas* and *Mitchell & Clayton,* for appellee.

Our first contention is, that the appellants are barred by the statute of limitations which requires bills of review to be filed within two years next after the final decree. A partition proceedings, under the laws of this state, is purely statutory, and is separate and apart from the general rules governing equity proceedings in general. Section 3536 of the Code of 1906. The statute itself, should be sufficient authority to establish our con-

tention, but we also cite the case of *Martin* v. *Gilleylen,* 70 Miss. 328.

The court followed this decision in the cases of *Alsobrook* v. *Eggleston,* 69 Miss. 833; *Schuler* v. *Murphy,* 91 Miss. 527. It then being well established that the only relief the appellants can seek is to be obtained through a bill of review, then they will be confined to the relief which can be granted under an ordinary bill of review and must be conformed to the general rules and procedure, with reference to such proceeding, 16 Cyc. 517; 16 Cyc. 532; *Vaughn* v. *Cutrer,* 49 Miss. 782; 2 Daniell, ch. Pr., page 1577; Storey's Eq. Pl. 379 and 404; 3 Ency. Pl. & Pr. 575; *Enochs* v. *Harrelson,* 57 Miss. 416.

Neither can a bill of review be based on errors resulting merely from a mis-conception of the evidence or in reaching a wrong conclusion therefrom. 16 Cyc. 528; *Jourdan* v. *Harvie* (Ala.), 31 So. 505.

We therefore submit that the action of the chancellor was correct in holding that this bill cannot be maintained as a bill of review, because it does not meet the requirements laid down by the authorities with reference to such proceeding.

Should the court hold that we are mistaken in the above contention, however, then we submit that if the bill can be maintained as a bill of review, then it cannot be maintained by the adult appellants, who are barred by the statute of limitation requiring such bills to be filed within two years from the date of the final decree. 16 Cyc. 534; *Vaughn* v. *Cutrer,* 49 Miss. 785.

There is still another reason for holding that the minor cannot re-open the former decree in this cause and that is, because the minor was joined, as a complainant, in the original bill for partition, by her next friend, and the entire proceeding was *ex parte.* It is well settled in this state, that a decree obtained by a minor, though next friend, is as binding on the minor as it is upon an adult. In support of this we cite: *Johns* v. *Harper,* 61 Miss. 145.

Under the general law, it is held that a bill of review will not lie to correct a consent decree. 16 Cyc. 518; *Alder* v. *Van Kirk Land Co.* (Ala.), 21 So. 490; *Thompson* v. *Maxwell Land Grant Co.* (U. S.), 24 Fed. 481.

ETHRIDGE, J., delivered the opinion of the court.

(After stating the facts as above.) The question as to whether this bill is a bill of review, or whether it is an original suit under the head of mistake, accident, and fraud, arises for consideration. The chancellor's view was, that it was a bill of review, and that it was barred by the two-year statute, and would expire in two years from the date of the decree, in September, 1909. It may be stated, generally, that a bill of review is one filed to procure an examination and reversal of the decree, after its enrollment, for some mistake appearing on the face of the papers in the case or from some fact arising subsequent to the original decision which would change the status of the parties' rights. In *Vaughan* v. *Cutrer*, 49 Miss. 782, this court, discussing a question similar to this said:

"With respect to the first question, it is said in the books that a bill of review can only be brought upon error in law, appearing on the face of the decree without further examination of matters of fact, or upon some new matter, which has been discovered after the decree, and could not possibly have been used when the decree was made. 2 Daniell's Ch. Pr., 1576. If the bill is filed, as in this case, on the ground of new matter, discovered since the decree, it must be by the special leave of the court, first obtained for that purpose. 2 Daniell's Ch. Pr. 1577; Storey's Eq. Plead. 379, par. 404."

See, also, 16 Cyc. 532; *Enochs* v. *Harrelson,* 57 Miss. 465.

It is not pretended in this case that the fact or facts occurred subsequent to the decree rendered, but that the fact existed at that time, but did not appear and were

not known at the time by the parties to the suit. If this suit was a bill of review we think that complainants would be barred so far as any of them, except the minor, was concerned, and that the fact that one was a minor would not aid the ones against whom the two-year statute had expired. The right of each to take appropriate action, to bring a bill of review, must be exercised by such party within the two years. It is true that the minor, on reaching majority, may bring suit that would cause the whole partition to be overturned and corrected; but only such party could bring the suit. The ones who had let the statute expire could not initiate the suit, though they might consent to or join in it.

However, in our opinion, this is an original suit in equity, and not a bill of review. It is founded on the doctrine of mistake. One of the original heads of equity jurisdiction is fraud, accident, and mistake, and this is one of the fundamental jurisdictions of equity. We think the jurisdiction of equity in cases of mistake is as broad and coextensive as its jurisdiction in fraud. Where all the parties in a suit and all the officers of a court, and the court itself, acting on and moved by a belief in a certain state of facts, enters a judgment on such facts which would be proper, but which afterwards, by reason of the mistake, would work injustice and hardship upon some of the parties, equity has and should have power to apply the proper remedy. Fraud vitiates a judgment caused by the active agency of some party to the proceeding, as the court is misled and deceived as to the facts upon which it attempts to administer the law, and mistake is equally efficacious in procuring a wrong, though all the parties are free from turpitude in procuring the judgment. The evidence amply warrants the finding of facts by the chancellor as to what the parties understood in the original proceeding, and it would be not only inequitable, but a gross wrong, to permit a judgment to stand which is clearly founded upon mistaken facts, if no innocent person would suffer by correcting the mis-

take. In the case of *Webster* v. *Skipwith,* 26 Miss. 341, which was a suit to annul a judgment, the court, discussing the question, said:

"In the application of the remedial powers of a court of equity to cases of this nature, they appear to have acted rather upon the intrinsic equity of the particular case, than upon any strict rule limiting and restraining the powers so as to prevent them from doing equity. Judge STOREY lays down the rule thus: 'That in all cases whereby accident, mistake, or fraud, or otherwise, a party has an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage.' 2 Storey's Eq. Jur. par. 885."

Judge Storey has the following to say, in volume 1, section 166, Equity Jurisprudence (4th Ed.):

"It (equity) will always interfere in cases of mistake in judgment and other matters of record, injurious to the rights of the party."

In 30 Cyc. 304, 305, the rule is laid down as follows:

"Relief may always be sought and secured by an independent suit in equity, for any cause justifying relief in equity from any other judgment affecting the title or the right to the possession of real property, such as mistake or fraud resulting in inequitable allotment."

In *Fore* v. *Foster's, Adam's,* 86 Va. 104, 9 S. E. 497, the Virginia court held that equity had jurisdiction to grant relief against an erroneous decision by which one party received a considerable portion more, in a portion suit, than it was entitled to, and another party received an amount less than he should have received. The court says:

"The bill in this case is an original bill, to correct a mistake of fact, and falls within the general rule that an act done or contract made under a mistake or ignorance of a material fact is voidable and reviewable in

equity; and this rule applies, not only to cases where there has been a studied suppression or concealment of facts by the other side which would amount to a fraud, but also to many cases of innocent ignorance and mistake on both sides; and it is a material mistake, involving a large sum of money or a large tract of land, as it may be regarded."

In *Sullivan* v. *Lumsden,* 118 Cal. 664, 50 Pac. 777, a California case, in which an original bill was filed in equity to correct an error of allotment in a partition suit, the court said in part:

"The same rule applies to mistake, and to judgments or decrees in partition as well as other judgments. 'A final judgment or decree in partition is not more exempt from the interference and controlling power of courts of equity than are final judgments and decrees in other cases. Hence such a mistake of facts, or such accident as would authorize a court of equity in (enjoining) or setting aside an ordinary judgment, will authorize it to set aside or correct a judgment or decree of partition. . . . If a mistake in matters of description has been made by the commissioners in drafting their report, and has also been carried into the final judgment, it may be corrected by proceedings in equity.' Freeman, Coten, par. 534; *Smith* v. *Butler,* 11 Or. 46, 4 Pac. 517; *Marvin* v. *Marvin,* 52 How. Prac. [N. Y.] 97; *Wilbur* v. *Dyer,* 39 Me. 169; *Douglass* v. *Viele,* 3 Sandf. Ch. 439. 'The mistake which will justify this relief may also be the mistake of the court. But, wherever it may be found that inadvertence or mistake is held to be ground for setting aside a judgment, it will be noticed that it is not a mistake of the law, or an inadvertent conclusion as to what the law is, but a mistake or inadvertence in doing something not intended to be done.' 1 Black, Judgm. par. 335. Was the mistake here complained of such a one as a court of equity will relieve against? We think it was. It was clearly extrinsic and collateral to the questions examined and determined in

the action, and led the court to do what it evidently never intended to do; that is, to confirm to the plaintiffs a piece of land not decribed or referred to in the complaint or in the findings or interlocutory judgment.''

See, also, *Adair* v. *Cummins,* 48 Mich. 375, 12 N. W. 495.

We think it manifest, from the record in this case, that it was proper for the court to entertain jurisdiction and proceed to grant appropriate relief, and that the court below was mistaken in its conception that only a bill of review would lie in this case. If the matter appeared on the face of the proceedings, where it could be discovered by reasonable diligence within the two-year period, a bill of review would be an appropriate remedy; but on the allegations of the bill in this suit, and the finding of the facts by the chancellor, we think relief should be granted.

We do not think the complainants are estopped by procuring the entry of the decree in the original suit, because the mistake was unknown at that time, and it was not the conscious doing of a thing, or the taking of a particular step, with knowledge of the appropriate facts upon which an estoppel could arise. Of course, where a party, with full knowledge of the facts, procure a judgment of the court, or suffers a judgment of the court to be entered, with knowledge of facts which he fails to disclose, the principle of estoppel would apply. Very many cases can be imagined where the entry of a judgment on mistake would reult in the greatest hardship and the grossets wrong if it should be held that the court had no jurisdiction to correct a judgment founded on a mutual mistake; and while, in this case, one of the heirs, had conveyed the land assigned, it is clear from the record that the parties buying the land bought with notice and with the expectation that the heir was only entitled to convey two hundred and ten acres; and the chancellor's finding is warranted by the evidence, as to

the knowledge of defendants Wesson and Stovall of these facts.

The decree will be reversed, and the cause remanded for appropriate relief on the entire record.

*Rversed and remanded.*