SEBASTIAN W. BRANDAU ET AL. v. FRANCES L. GREER ET AL.

[48 South. 519.]

1. GUARDIAN AND WARD. *Acquirement of ward's property by guardian wife.*

The wife of a guardian cannot lawfully acquire the property of her husband's ward where the law forbids him to acquire it.

2. SAME. *Duty to protect ward. Profit on estate.*
It is the guardian's duty to protect his ward's estate, and he can-' not make profit on it, except the compensation lawfully allowed him for administering his trust.

3. SAME. *Nature of trust. Neglect of ward's interest.*

A guardianship is a trust of the most sacred character, and a guardian cannot be allowed an inducement to neglect the interest of his ward.

4. SAME. *Unfairness in acquiring property of ward.*

If a guardian acquires his ward's property under circumstances raising a strong suspicion of unfairness, the transaction will not be allowed to stand when assailed by the ward.

5. SAME. *Same. Ratification. Evidence.*

Where a guardian unfairly obtained the property of his infant ward and claims that the ward ratified the transaction after reaching majority, the ratification will be ineffectual, unless it be clearly shown that the ward had full knowledge of all the facts, was advised of the law relating thereto and acted freed from the guardian's influence.

FROM the chancery court of Bolivar county.

HON. PERCY BELL, Chancellor.

Miss Greer and others, appellees, were complainants in the court below; Brandau and wife, appellants, were defendants there. From a decree in complainants' favor the defendants appealed to the supreme court.

The bill charged that Sebastian W. Brandau had been appointed guardian of the complainants and took charge of their estate while they were small children, and that valuable property, the lands described in the bill, which had been left by their

father incumbered by a deed of trust had been wrongfully per-
mitted by their said guardian to be sold under foreclosure pro-
ceedings with a view of vesting the title thereto in his wife
and that it was afterwards bought in at said sale by a mere dum-
my and transferred, without consideration, to Mrs. Brandau,
wife of their guardian, and that appellees never realized any-
thing out of a valuable estate left them by their father. The bill
prayed the cancellation of the deed to Mrs. Brandau, for a de-
cree for the income from said lands, less expenses, and for pos-
session, etc. The court below granted the relief prayed, and ap-
pointed a special commissioner to ascertain the amount due com-
plainants.

*Jones & Hardee,* for appellants.

The true rule by which to determine whether or not an infant
after attaining his majority has ratified *in pais* a deed or con-
tract made during infancy, is not whether the act was done with
the intention to ratify, as claimed by appellees in their brief,
but whether after he has become of age, an affirmance of his con-
tract may be inferred from any act totally inconsistent with an
intention to disaffirm, as, for instance, receiving rent from a
lease made in infancy. *Huth v. Carondolet Docko,* 56 Mo. 202;
*Thomas v. Pullis,* Id. 211; *Emmons v. Murray,* 16 N. H. 285;
*McCormick v. Leggett,* 53 N. C. (8 Jones Law.) 425; *Wheaton
v. East,* 26 Am. Dec. 251; *Scott v. Buchanan,* 30 Tenn. (11
Humph.) 468; *Farr v. Summer,* 36 Am. Dec. 327; *Manning
v. Johnson,* 63 Am. Dec. 732; *McKamy v. Cooper,* 81 Ga. 679.

In this state the rule is that where the party after becoming
of age disaffirms a contract during infancy, he must refund what
he has received, particularly if he still has in his possession any
part of the consideration. In the instant case appellees are on
record as admitting that they are now in possession of a consid-
erable portion of the consideration. *Thornton v. Holland,* 87
Miss. 470, 40 South. 19; *Evans v. Morgan,* 69 Miss. 328, 12
South. 270; *Kerr v. Bell,* 44 Mo. 82.

In *Hillyer v. Bennett,* 3 Edw. Ch. 222, it is held that "If a

person after becoming of age files a bill to obtain possession of property parted with while he was an infant, he will be required to restore what he received upon parting with the property in question, especially if the other contractor dealt in ignorance of the infancy."

*Nearing & Townsend* and *Roy Church,* for appellees.

A guardian cannot purchase property belonging to his wards at a trustee's sale for $4,500 for which he was willing to pay $6,000, and have it sustained in a court of equity; nor can his wife, directly or indirectly, acquire title at such a sale. *Brockett v. Richardson,* 61 Miss. 766; *Wise v. Hyatt,* 68 Miss. 714; *Patterson v. Booth,* 103 Mo. 402; *Yonce v. McBride,* 68 N. C. 532 (486); *Small v. Small,* 74 N. C. 16 (28); *Low v. Purdy,* 2 Lans. (N. Y.) 422; *Shelton v. Lewis,* 27 Ark. 190; *Gordon v. English,* 3 Lea (Tenn.) 634; *Hayward v. Ellis,* 15 Pick. 272; 15 A. & E. Ency. Law, p. 75.

MAYES, J., delivered the opinion of the court.

Under the facts of this case Brandau and his wife must be treated as the same person. If it was unlawful for Brandau to acquire from his wards the title to their property, it could never be held that one holding so close a relation to him as that of wife, and with such identity of interest as usually exists between parties sustaining this relation to each other, could lawfully acquire a title which the husband was forbidden to acquire.

There may be many disputed facts in this record, but the fact which controls this whole case admits of no dispute. The fact is that Sebastian W. Brandau was the guardian of complainants and took charge of their estate while they were very young. He took them to his home in Lexington, Mo., and for a time and until they went out to earn their own living they became inmates of his household. Mrs. Brandau was their aunt, and before they had reached their majority Brandau, by private contract

with them, had succeeded in obtaining the title to one part of the land for himself, and his wife had obtained the title to the remainder from the purchaser whom she and her husband had procured to buy at a sale under a mortgage which had been executed by the father and mother of complainants before their death. In brief, Brandau was appointed guardian of these complainants about the year 1895, and before the year 1903 his wards have no estate and Brandau and wife have a legal title to the entire estate which was left to them. Under the facts of this case it does not become a question as to whether or not Brandau has acted honestly or dishonestly in the matter of acquiring this title. We do not consider this case from that standpoint. But the question is, can such a transaction as this be allowed to stand, in any event, in a court of equity?

Under all settled rules of law it must be held that whatever title was acquired by either Sebastian W. Brandau, or his wife, under any of the sales or dealings with this property, either by themselves or at the instance of any other party, is held as trustees for the benefit of complainants. No transaction of this sort can or ought to be allowed to stand. It contravenes every rule of law applying to a person in a fiduciary character. It is the duty of the guardian to protect the estate of his ward in every way he can, and he can make no profit on such estate outside of what is provided by law to be allowed him for conducting the guardianship. *Brockett v. Richardson,* 61 Miss. 766; *Wise v. Hyatt,* 68 Miss. 714, 10 South. 37.

We but declare as the law what the courts have time and again announced. A trustee can be allowed under the law to have no inducement to neglect the interest of his ward. A guardianship is a trust of the highest and most sacred character. The guardian assumes to act for the parties, whom the law declares without discretion to act for themselves. If such a trustee acquired their property under such circumstances as to raise a strong suspicion of unfairness, the transaction cannot be allowed to stand when assailed by his wards. If ratification is claimed after full

age, it must appear by the most undoubted proof that the wards have, with full knowledge of all the facts and the law appertaining thereto, ratified and approved the transaction from which their guardian obtains his vantage. And even then, if the transaction is assailed by the wards, it will not be allowed to stand, except upon clear proof that the act of ratification took place at a time when they were free from the influence of the confidential relation. In short, the wards must have been fully informed and free of former influence.

In this case there was no ratification. It is impossible that there could have been, under the facts shown here. These complainants were unlettered. They had been cast out at an early age to support themselves. They were under the influence of Brandau to a very large extent. They had not reached the age of majority at the time these conveyances were made. They were but little past twenty-one years of age at the date this bill was filed asking for a cancellation of the Brandaus' title. The proof falls far short of showing ratification on their part, or any fact which would warrant this court in holding that they were estopped to claim their property.

The decree of the chancellor is eminently correct, and through its instrumentality justice will be done.

*Affirmed and remanded.*